UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GULF COAST BANK AND TRUST COMPANY, as successor in interest to, BANK OF AMERICA, N.A. § § § § § § Plaintiff, § § -v- § Cause No. § § MR. RICHARD REMIJAS, § § Defendant. § § | |

## COMPLAINT

Plaintiff, Gulf Coast Bank and Trust Company, by and through its attorneys, Alexander I. Passo and Latimer LeVay Fyock LLC, states as follows for its Complaint against Defendant, Mr. Richard Remijas, Jr. ("Defendant" or "Mr. Remijas"):

### I. NATURE OF THE CASE

1. This Complaint arises out of Defendant's failure to pay amounts due to Plaintiff, as successor to Bank of America, N.A., under a promissory note that was executed by Defendant.

### II. PARTIES

2. Plaintiff is incorporated within the State of Louisiana and its principal place of business is also located in Louisiana.

3. Defendant, Mr. Richard Remijas, is an individual who resides at 2724 Floral Trail, Long Beach, Indiana 46360, and he is a citizen of the State of Indiana.

1

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy is between citizens of different States and exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted occurred in this judicial district.

### IV. FACTS

6. On September 18, 2013, Mr. Remijas executed an Amended and Restated Promissory Note ("Note") in the amount of $751,064.00 to be paid to Bank of America, N.A., in exchange for the revision of previous terms on a promissory note executed on December 20, 2007. A true and correct copy of the Note is attached hereto as Exhibit 1.

7. On May 13, 2015, Plaintiff purchased the Note from Bank of America, N.A., and it executed an Allonge in consideration for the purchase. A true and correct copy of the Allonge is attached hereto as Exhibit 2.

8. The Note contains two tranches to divide the principal loan amount: the first tranche ("Tranche A") was in the amount of $250,526, and the second tranche ("Tranche B") was in the amount of $500,538.00.

9. The Note provides that Mr. Remijas was obligated to provide a payment on the principal and interest on Tranche A beginning on October 1, 2013, and each first day of each subsequent month until the Tranche A maturity date, which was September 30, 2015.

10. The Note also provides that Mr. Remijas was obligated to provide a payment on the interest on Tranche B beginning on October 1, 2013, and each first day of each subsequent month until the Tranche B maturity date, which was January 1, 2016.

11. Tranche A bore an interest rate per annum equal to two percent (2.00%) and Tranche B bore an interest rate per annum equal to three percent (3.00%). However, in the event of a default, the interest rate for both tranches increase by another two percent for each tranche, respectively.

12. Defendant has failed to make timely payments upon the Note pursuant to its terms.

13. Furthermore, Defendant has failed to payoff all outstanding principal and interest on both Tranche A and Tranche B by their respective maturity dates.

## V.   COUNT I - BREACH OF CONTRACT

14. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully stated herein as this paragraph.

15. The Note is an enforceable contract.

16. Defendant is obligated to pay the indebtedness pursuant to the Note's terms.

17. Plaintiff is the owner of the Note.

18. Defendant's failure to make timely payments upon the Note and failure to satisfy his obligation to pay the principal and interest due on both Tranche A and Tranche B upon their maturity dates constitute a breach of the Note.

19. Plaintiff has demanded repayment, but Defendant has not fully or timely repaid the Plaintiff.

20. As a direct and proximate result of Defendant's breach, Plaintiff is entitled to recover damages under the Note in the form of unpaid principal and interest in an amount in excess of $700,000.

21. Additionally, pursuant to the terms of the Note, Plaintiff is entitled to recover additional sums including attorneys' fees and costs incurred in order to enforce the terms of the Note.

WHEREFORE, Plaintiff requests that judgment be entered in its favor against Defendant in an amount in excess of $700,000.00, including costs, pre-and-post-judgment interest, attorney's fees, and for any further relief this Court deems just and appropriate.

Respectfully submitted,

By: /s/ Alexander I. Passo
One of the Attorneys for Plaintiff

Alexander I. Passo (#33934-64)
Latimer LeVay Fyock LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois  60603
(312) 284-6256
Fax: (312) 422-8001
apasso@llflegal.com

## AMENDED AND RESTATED PROMISSORY NOTE

$751,064.00                                                                 Dated: as of September 18, 2013

This Amended and Promissory Note (as amended, restated, modified or supplemented and in effect from time to time, this "Note") has been executed by RICHARD J. REMIJAS, JR. (the "Borrower"), in favor of BANK OF AMERICA, N.A. (the "Bank").

WHEREAS, the Bank, as successor to LaSalle Bank National Association, previously made available to the Borrower a revolving credit facility to the Borrower evidenced by that certain Promissory Note, dated December 20, 2007, in the maximum principal amount of Seven Hundred Sixty Five Thousand Eight Hundred Fifty-Nine and 50/100 Dollars ($765,859.50), executed by the Borrower (as amended, the "Original Note");

WHEREAS, the Original Note matured by its terms on July 1, 2011, and amounts remain outstanding thereunder; and

WHEREAS, the Borrower and the Bank now desire to amend and restate the Original Note in accordance with the terms, subject to the conditions and in reliance upon the representations, warranties and covenants set forth herein and in the other documents and instruments entered into or delivered in connection with or relating to the loan contemplated in this Note.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower hereby agrees as follows:

1. **TERM LOAN**.

FOR VALUE RECEIVED, the Borrower hereby promises to pay to the order of the Bank on or before the maturity dates set forth herein, the principal sum of Seven Hundred Fifty-One Thousand Sixty Four and 00/100 Dollars ($751,064.00) or if less, the aggregate unpaid principal amount of the Loan (as hereinafter defined).

**EXHIBIT 1**

1

The Borrower and the Bank acknowledge that concurrently with the effectiveness hereof the amounts outstanding under the Original Note (including all outstanding principal and interest) shall continue in existence as the Loan hereunder.

The Loan shall be divided into two tranches. The first tranche (the "Tranche A Loan") shall be in an original principal amount of $250,526 and the second tranche (the "Tranche B Loan") shall be in an original principal amount of $500,538.

2. **DEFINITIONS.**

In addition to the terms defined in the introductory paragraph of this Note, the following terms shall have the meanings indicated for purposes of this Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Business Day" means any day of the year on which banks are not required or authorized to close in Chicago, Illinois.

"Collateral Documents" means the Pledge Agreement and the Supplemental Life/Split Dollar Plan executed by the Borrower that names Bank of America, N.A. as the beneficiary of 65% of the benefits under such Plan on April 14, 2010.

"Effective Date" has the meaning specified in Section 7.

"Event of Default" means any event described in Section 10.

"Indebtedness" means, with respect to any Person (and without duplication), (a) all indebtedness for borrowed money of such Person or for the deferred purchase price of property acquired by such Person, (b) all indebtedness of such Person created or arising under any conditional sale or other title retention agreement with respect to any property acquired by such Person, (c) all obligations of such Person under leases which shall have been or should be recorded as capitalized leases in accordance with generally accepted accounting principles, (d) all direct or indirect guarantees by such Person of indebtedness for borrowed money of any other Person and (e) all indebtedness for borrowed money secured by any encumbrance upon or in any property owned by such Person whether or not such Person has assumed or become liable for the payment of such indebtedness for borrowed money.

"Loan" means the Tranche A Loan and the Tranche B Loan.

"Loan Documents" means this Note, the Collateral Documents, the Pledged Collateral Account Control Agreement dated as of June 2, 2010 among the Borrower, the Bank and Merrill Lynch, Pierce, Fenner and Smith, and any other instrument, document or agreement delivered by the Borrower to the Bank in connection with the financing transaction evidenced hereby.

"Net Proceeds" means, the aggregate proceeds (including proceeds received by way of deferred payment of principal pursuant to a note, installment receivable or otherwise, but only as and when received) received by the Borrower pursuant to a sale of (or income from or dividend,

distribution or return of capital in connection with) the Pledged Stock or the Pledged Interest net of (i) the direct costs relating to such sale of the Pledged Stock or Pledged Interest (including sales commissions and legal and accounting fees) and (ii) taxes paid as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements).

"Person" means an individual, partnership, corporation, limited liability company, trust, joint venture, joint stock company, association, unincorporated organization, government or agency or political subdivision thereof, or other entity.

"PIK Amount" has the meaning set forth in Section 3.

"Pledge Agreement" means the Commercial Pledge Agreement, dated December 20, 2007, executed by Borrower in favor of Bank, as amended, restated, modified or supplemented and in effect from time to time, pursuant to which the Borrower has granted to the Bank a lien and security interest in certain assets, including, without limitation, his equity interest in Park Bancorp, Inc. and 2424 Professional Center, LLP, as more fully described therein.

"Pledged Interest" means any equity interest in 2424 Professional Center, LLP pledged pursuant to the Pledge Agreement.

"Pledged Stock" means any Park Bancorp, Inc. stock pledged pursuant to the Pledge Agreement.

"Tranche A Loan" has the meaning set forth in Section 1.

"Tranche A Loan Maturity Date" means the earlier to occur of (i) September 30, 2015 or (ii) the date on which the Bank accelerates this Note and the payment of all obligations hereunder pursuant to Section 10(b).

"Tranche B Loan" has the meaning set forth in Section 1.

"Tranche B Loan Maturity Date" means the earlier to occur of (i) January 1, 2016 or (ii) the date on which the Bank accelerates this Note and the payment of all obligations hereunder pursuant to Section 10(b).

"Unmatured Event of Default" means an event, that with notice, lapse of time, or both, would become an Event of Default.

3.    **INTEREST RATE**. The Borrower hereby promises to pay to the Bank interest on the daily balance of the Loan at the rate set forth herein. The Tranche A Loan shall bear interest at a rate per annum equal to two percent (2.00%). The Tranche B Loan shall bear interest at a rate per annum equal to three percent (3.00%); provided that the Borrower will pay interest on the Tranche B Loan in kind rather than in cash, by capitalizing the amount of such interest and adding it to the principal of the Tranche B Loan (such capitalized amount, the "PIK Amount"). Upon the occurrence of any Event of Default or after maturity or after judgment has been rendered on any obligation under this Note, all amounts outstanding under this Note,

3

including any interest or costs which are not paid when due, will at the option of the Bank bear interest at a rate which is two percent (2.00%) higher than the rate of interest otherwise provided under this Note. This will not constitute a waiver of any default.

4. **PAYMENTS**.

   a. All payments of principal and interest under this Note shall be made in immediately available funds at the office of the Bank at 135 South LaSalle Street, Chicago, Illinois 60603, or at such other place as the Bank shall notify the Borrower in writing.

   b. Beginning October 1, 2013, the outstanding principal and interest on the Tranche A Loan shall be repaid in equal installments due on the first day of each month in an amount equal to $1,000 (which payments shall be applied first to accrued interest then to unpaid principal), with a final payment of all outstanding principal and accrued interest on the Tranche A Maturity Date. Principal amounts repaid on the Tranche A Loan may not be borrowed again.

   c. Beginning October 1, 2013, interest on the Tranche B Loan shall be due on the first day of each month and shall be payable in accordance with Section 3. All outstanding principal and interest (including any PIK Amount) on the Tranche B Loan shall be repaid in full on the Tranche B Maturity Date. Principal amounts repaid on the Tranche B Loan may not be borrowed again.

5. **METHOD OF CALCULATING INTEREST**. Interest shall be computed on the basis of a year consisting of 365 days and paid for the actual number of days elapsed.

6. **PREPAYMENTS**.

   a. **Voluntary Prepayments**. The principal and all accrued interest hereunder may be prepaid by the Borrower, in part or in full, at any time without premium or penalty and shall be applied to the Tranche A Loan in inverse order of maturity.

   b. **Mandatory Principal Prepayments**. The Borrower shall make payments at the following times and in the following amounts:

      i. promptly (and in any event within three Business Days) after the receipt by the Borrower of any Net Proceeds from the sale of any Pledged Stock, the Borrower shall make a principal prepayment in an amount equal to 100% of the amount of such Net Proceeds; and

      ii. promptly (and in any event within three Business Days) after the receipt by the Borrower of any income from, dividend or other distribution or return of capital related to the Pledged Interest, the Borrower shall make a principal prepayment in an amount equal to 100% of the amount of such Net Proceeds

4

707465222 08102551

      iii. promptly (and in any event within three Business Days) after the receipt by the Borrower of any Net Proceeds of the sale of the Pledged Interest, the Borrower shall make a principal prepayment in an amount equal to 100% of the amount of such Net Proceeds.

  c. **Allocation of Mandatory Prepayments**. Prepayments of the Loan pursuant to (i) Section 6(b)(i) and (iii) will be applied 50% to the Tranche A Loan and 50% to the Tranche B Loan, in inverse order of maturity and (ii) Section 6(b)(ii) will be applied 100% to the Tranche A Loan until paid in full and then to the Tranche B Loan, in inverse order of maturity.

7. **CONDITIONS PRECEDENT**. This Note shall become effective on the date (the "Effective Date") on which each the following conditions precedent are satisfied:

  a. Receipt by the Bank of the following documents, each of which shall be originals, facsimiles or .pdf files (followed promptly by originals) unless otherwise specified, each properly executed, each dated the Effective Date (or, in the case of certificates of governmental officials, a recent date before the Effective Date) and each in form and substance satisfactory to the Bank and its legal counsel:

      i. executed counterparts of this Note, together with evidence of the completion of all other actions, recordings and filings of or with respect to the Collateral Documents that the Bank may deem necessary or desirable in order to cause the Bank to have a perfected, first priority lien on the collateral identified therein; and

      ii. such other assurances, certificates, documents, consents or opinions as the Bank reasonably may require.

  b. Payment in full in cash of all invoiced and unpaid fees and out-of-pocket expenses incurred by the Bank, including, without limitation, the reasonable fees and expenses of the Bank's counsel in connection with the negotiation, preparation and execution of this Note.

8. **REPRESENTATIONS AND WARRANTIES**. The Borrower hereby represents and warrants to the Bank that:

  a. **Authorization**. The Borrower has capacity to enter into and perform his obligations hereunder.

  b. **No Conflicts or Default**. The execution, delivery and performance by the Borrower of the Loan Documents to which it is a party do not (i) conflict with (A) any provision of law, (B) any material agreement binding upon the Borrower or (C) any court or administrative order or decree applicable to the Borrower, (ii) require, or result in, the creation or imposition of any lien on any asset of the Borrower, other than in favor of the Bank or (iii) cause, or permit any Person to

5

707465222 08102551

cause to occur, any default under any instrument, document or agreement binding upon the Borrower.

c. **Validity and Binding Effect**. The Loan Documents to which the Borrower is a party are the legal, valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency or other similar laws of general application affecting the enforcement of creditors' rights or by general principles of equity limiting the availability of equitable remedies.

d. **No Default**. The Borrower is not in default under any agreement or instrument to which it is a party or by which his properties or assets is bound or affected. No Event of Default or Unmatured Event of Default has occurred and is continuing.

e. **Financial Information**. All financial and other information that has been or will be supplied to the Bank is sufficiently complete to give the Bank accurate knowledge of the Borrower's financial condition, including all material contingent liabilities. Since the date of the most recent financial statement provided to the Bank, there has been no material adverse change in the business condition (financial or otherwise), operations, properties or prospects of the Borrower.

f. **Lawsuits**. There is no lawsuit, tax claim or other dispute pending or threatened against the Borrower which, if lost, would impair the Borrower's financial condition or ability to repay the loan.

g. **Collateral**. All collateral required pursuant to this Note or in which a security interest is granted or is purported to be granted pursuant to the Collateral Documents is owned by the grantor of the security interest free of any title defects or any liens or interests of others, except those which have been approved by the Bank in writing.

h. **Tax Matters**. The Borrower has no knowledge of any pending assessments or adjustments of his income tax for any year and all taxes due have been paid, except as have been disclosed in writing to the Bank.

9. **COVENANTS**. From the date of this Note until this Note is paid in full, the Borrower agrees that he will:

   a. **Taxes and Liabilities**. File all tax returns when due, and pay or discharge, when due, all taxes reflected on such returns; and pay, when due, all assessments and other liabilities (including, without limitation, liabilities which could result in the imposition of any lien), except as contested in good faith and by appropriate proceedings.

6

707465222 08102551

b. **Compliance with Applicable Laws**. (i) ensure he is not and shall not be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("OFAC"), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply with all applicable Bank Secrecy Act laws and regulations, as amended. As required by federal law and the Bank's policies and practices, the Bank may need to obtain, verify and record certain customer identification information and documentation in connection with opening or maintaining accounts, or establishing or continuing to provide services.

c. **Mortgage, Etc.**. Not consent to (i) the aggregate principal amount secured by the any mortgage on real property owned by 2424 Professional Center, LLP being increased or (ii) any additional Indebtedness being incurred by 2424 Professional Center, LLP, in each case without the prior written consent of the Bank.

d. **Life Insurance**. (i) Maintain the Supplemental Life/Split Dollar Plan executed by the Borrower and (ii) ensure that the Bank remains the beneficiary of not less than 65% of the benefits thereunder.

e. **Further Assurances**. Take such actions as are necessary or as the Bank may reasonably request from time to time to ensure that the Loan and use of the proceeds of the Loan comply in all material respects with Regulation U of the Federal Reserve Board of Governors.

f. **Collateral Distribution**.

   i. Upon the earliest of (x) the request of the Bank, (y) upon a recapitalization of Park Bancorp, Inc. and (z) the Tranche A Loan Maturity Date, the Borrower will sell the Pledged Stock and apply the Net Proceeds of such sale in accordance with Section 6(b)(i).

   ii. On or before the Tranche A Loan Maturity Date, the Borrower will sell the Pledged Interest and will apply the Net Proceeds of such sale in accordance with Section 6(b)(iii).

10. **EVENTS OF DEFAULT AND REMEDIES**.

    a. **Events of Default**. Each of the following shall constitute an Event of Default under this Note:

       i. Default in the payment when due of (1) any principal of this Note or (2) any interest on this Note and the continuation of such default in the payment of interest for three days;

7

707465222 08102551

ii. Default in the payment when due (subject to any applicable grace period), whether by acceleration or otherwise, of any other Indebtedness of, or guaranteed by, the Borrower or default in the performance or observance of any obligation or condition with respect to any such other Indebtedness if the effect of such default (subject to any applicable grace period) is to accelerate the maturity of any such Indebtedness or to permit the holder or holders thereof, or any trustee or agent for such holders, to cause such Indebtedness to become due and payable prior to its expressed maturity;

iii. The Borrower becomes insolvent, or generally fails to pay, or admits in writing his inability to pay, his debts as they mature, or applies for, consents to, or acquiesces in, the appointment of a trustee, receiver or other custodian for the Borrower, or for a substantial part of the property of the Borrower or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for the Borrower or for a substantial part of the property of the Borrower and is not discharged within 60 days; or any bankruptcy, reorganization, debt arrangement or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is instituted by or against the Borrower and, if instituted against the Borrower is consented to or acquiesced in by the Borrower or remains for 60 days undismissed; or any warrant of attachment or similar legal process is issued against any substantial part of the property of the Borrower which is not released within 60 days of service;

iv. Default by the Borrower in the performance of (x) <u>Sections 9(c)</u> or <u>9(f)</u> or (y) any agreement set forth in this Note, any Loan Document other than this Note (and not constituting an Event of Default under any of the other subsections of this Section) and the continuation of any default referred to in this <u>clause (y)</u> for a period of 30 days, or any Loan Document shall, for any reason, fail to be fully enforceable against the Borrower or the Borrower shall contest in any manner the validity or enforceability of any provision of any Loan Document or deny that he has any or further liability or obligation under any Loan Document or purports to revoke, terminate or rescind and provision of any Loan Document;

v. Any warranty made by the Borrower in any Loan Document is untrue or misleading in any material respect when made or deemed made; or any schedule, statement, report, notice, certificate or other writing furnished by the Borrower to the Bank is untrue or misleading in any material respect on the date as of which the facts set forth therein are stated or certified; or any certification made or deemed made by the Borrower to the Bank is untrue or misleading in any material respect on or as of the date made or deemed made; or

8

   vi. The Borrower shall die or become permanently incapacitated.

 b. **Remedies**. If any Event of Default shall have occurred and be continuing, the Bank may declare this Note and all obligations hereunder to be due and payable, whereupon this Note and all obligations hereunder shall become immediately due and payable, all without notice of any kind (except that if an event described in clause (a)(iii) above occurs, this Note and all obligations hereunder shall become immediately due and payable without declaration or notice of any kind). The Bank shall promptly advise the Borrower of any such declaration, but failure to do so shall not impair the effect of such declaration.

11. **NON-RECOURSE TO BORROWER**. Notwithstanding anything herein or in any other Loan Document to the contrary:

 a. The Bank acknowledges, covenants and agrees with the Borrower that: (a) the Borrower shall not have any personal liability for the Tranche B Loan; (b) the Bank will look solely to the collateral pledged under the Collateral Documents for payment of the Tranche B Loan; and (c) the Bank shall not seek, assert or enforce any order, judgment, levy or other claim or cause of action for or on account of any obligations now or hereafter payable hereunder with regard to the Tranche B Loan against the Borrower or any of the assets or properties of the Borrower other than the collateral pledged under the Collateral Documents; unless after the occurrence of any Event of Default the Bank, at its option, has declared the obligations related to the Tranche B Loan to be fully recourse to the Borrower.

 b. The Borrower acknowledges and agrees that nothing in this Section 11 shall have any effect any of his obligations related to the Tranche A Loan.

 c. Nothing in this Section 11 shall relieve any Person from any liability for receipt of any preferential payment or fraudulent transfer or for such Person's own fraud or criminal act or obligations under Section 12.

12. **GENERAL**.

 a. **Waiver and Amendments**. No delay on the part of the holder of this Note in the exercise of any power or right shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. The remedies provided for herein are cumulative and not exclusive of any remedies which may be available to the Bank at law or in equity. No amendment, modification or waiver of, or consent with respect to, any provision of this Note shall in any event be effective unless the same shall be in writing and signed and delivered by the Bank. Any waiver of any provision of this Note, and any consent to any departure by the Borrower from the terms of any provision of this Note, shall be effective only in the specific instance and for the specific purpose for which given.

9

b. **Notices**. Except as otherwise expressly provided herein, any notice hereunder to the Borrower or the Bank shall be in writing (including facsimiles) and shall be given to the Borrower at his address, or facsimile number set forth on the signature page hereof and to the Bank as provided in this Subsection or at such other address, or facsimile number as the Borrower or the Bank may, by written notice, designate as its address, or facsimile number for purposes of notice hereunder. All such notices shall be deemed to be given when transmitted by facsimile, personally delivered or, in the case of a mailed notice, when sent by registered or certified mail, postage prepaid, in each case addressed as specified in this Subsection. Notices to the Bank shall be given at 135 South LaSalle Street, Chicago, Illinois 60603, Attention: Financial Institutions, Colin McClary, Senior Vice President, facsimile number (312) 537-6917.

c. **Release and Covenant Not to Sue**. In consideration of the agreements and understandings in this Note, the Borrower, for himself and on behalf of his Derivative/Successor Persons, hereby knowingly and voluntarily, unconditionally and irrevocably, absolutely, finally and forever releases, acquits and discharges each Bank Released Party from any Claim relating in any manner whatsoever to any of the Loan Documents, including any transaction contemplated thereby or undertaken in connection therewith, or otherwise relating to the Borrower's credit relationship with Bank that existed at any time on or prior to the Effective Date, including relating or purportedly relating in any manner whatsoever to any facts, known or unknown, in existence on or at any time prior to the Effective Date (each a "Borrower Related Claim").

The Borrower hereby knowingly and voluntarily, unconditionally and irrevocably, absolutely finally and forever covenants that it shall refrain, and further shall direct and cause any of his Derivative/Successor Persons to refrain, from commencing or otherwise prosecuting any action, suit or other proceeding of any kind, nature, character or description, including in law or in equity, against any Bank Released Party on account of any Borrower Related Claim. Each Bank Released Party shall be entitled to enforce this covenant against the Borrower through specific performance. In addition to any other liability that shall accrue upon the breach of this covenant, the breaching party (including any Derivative/Successor Person of the Borrower that commences or prosecutes any such action, suit or other proceeding) shall be liable to such Bank Released Party for all reasonable attorneys' fees and costs incurred by such Bank Released Party in the defense of any such action, suit or other proceeding.

The following terms shall have the following definitions when used in this clause (c):

"Bank Released Parties" shall mean the Bank and each of its former, current and future subsidiaries, parents, partnerships, joint ventures, other affiliates, officers, directors, employees, attorneys, agents

10

(including consultants), assigns, heirs, executors, administrators, predecessors, successors and assigns.

"Claims" shall mean any and all claims, counterclaims, actions, causes of action (including any relating in any manner to any existing litigation or investigation), suits, obligations, controversies, debts, liens, contracts, agreements, covenants, promises, liabilities, damages, penalties, demands, threats, compensation, losses, costs, judgments, orders, interest, fee or expense (including attorneys' fees and expenses) or other similar items of any kind, type, nature, character or description, including, whether in law, equity or otherwise, whether now known or unknown, whether in contract or in tort, whether choate or inchoate, whether contingent or vested, whether liquidated or unliquidated, whether fixed or unfixed, whether matured or unmatured, whether suspected or unsuspected and whether or not concealed, sealed or hidden, of the Borrower or that may be asserted by the Borrower, through the Borrower or otherwise on behalf of the Borrower (including those which may be asserted on any derivative basis).

"Derivative/Successor Person" shall mean, with respect to the Borrower, any person or other entity (including any former, current or future employee, officer, agent, attorney, board member, shareholder, parent, subsidiary, partnership, joint venture, other affiliate, spouse, relative, heir, beneficiary, legal representative, creditor, successor or assign) that may assert or may attempt to assert any Claim by or otherwise belonging to the Borrower, through the Borrower or otherwise on behalf of the Borrower (including on any derivative basis).

d. **Right of Setoff**. To the extent permitted by applicable law, the Bank reserves a right of setoff in all the Borrower's accounts with the Bank (whether checking, savings, or some other account). This includes all accounts the Borrower holds jointly with someone else and all accounts the Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. The Borrower authorizes the Bank, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

e. **Expenses**. The Borrower agrees to pay the Bank upon demand for all reasonable expenses, including reasonable fees of attorneys and paralegals for the Bank and other legal expenses incurred by the Bank in connection with (i) the preparation, negotiation and execution of this Note, the Loan Documents and any other instrument or document provided for herein, (ii) the preparation, negotiation and execution of any and all amendments to this Note, the Loan Documents or any other instrument or document provided for herein, and (iii) the enforcement of the Borrower's obligations under this Note, the Loan Documents or any other instrument or document provided for herein. The Borrower also agrees to (1) indemnify and hold the Bank harmless from any loss or expense which may arise

or be created by the good faith acceptance by the Bank of telephonic or other instructions for making the Loan or disbursing the proceeds thereof and (2) pay, and save the Bank harmless from all liability for, any stamp or other tax which may be payable with respect to the execution or delivery of this Note or any other instrument or document provided for herein or delivered or to be delivered hereunder or in connection herewith. The Borrower's foregoing obligations shall survive any termination of this Note.

f. **Severability**. Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

g. **Law**. This Note shall be a contract made under, and governed by, the internal laws of the State of Illinois.

h. **Successors**. This Note shall be binding upon the Borrower and the Bank and their respective successors and assigns. The Bank may sell participations in or assign this loan, and may exchange information about the Borrower with actual or potential participants or assignees. The Borrower shall not assign his rights or delegate his duties hereunder without the prior written consent of the Bank.

i. **Consent to Jurisdiction**. TO INDUCE THE BANK TO ACCEPT THIS AGREEMENT, THE BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO THE BANK'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS. THE BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS UPON THE BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE BORROWER AT THE ADDRESS STATED ON THE SIGNATURE PAGE HEREOF AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

j. **JURY TRIAL WAIVER**. THE UNDERSIGNED WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (B) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE

707465222 08102551

TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE BANK OR ANY OTHER PERSON INDEMNIFIED UNDER THIS AGREEMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

k. This Note restates and replaces the Original Note and is not a repayment or novation of the Original Note. Nothing contained in this Note shall:

  i. be deemed to cancel, extinguish or constitute payment or satisfaction of the Original Note or any other indebtedness or obligations of the Borrower to the Bank thereunder or in connection therewith;

  ii. constitute new or additional Indebtedness or create a new or additional lien;

  iii. constitute a re-advance of the funds issued pursuant to the Original Note; or

  iv. evidence any Indebtedness other than the same Indebtedness evidenced by the Original Note.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

_____
RICHARD J. REMIJAS, JR

Address: 5400 S. Pulaski Rd
Chicago, IL 60632

14

707465222 08102551

## ALLONGE

THIS ALLONGE IS AN ENDORSEMENT TO BE ATTACHED TO AND MADE A PART OF THAT CERTAIN AMENDED AND RESTATED PROMISSORY NOTE (together with any and all addenda, riders, exhibits, supplements, amendments, schedules and attachments) dated as of September 18, 2013 made by Richard J. Remijas, Jr., payable to the order of Bank of America, N.A. in the original principal amount of Seven Hundred Fifty-One Thousand Sixty and 00/100 Dollars ($751,060.00).

PAY TO THE ORDER OF GULF COAST BANK AND TRUST COMPANY, A LOUISIANA STATE-CHARTERED BANK, AS IS, WHERE IS, WITH ALL FAULTS AND WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, EXCEPT AS PROVIDED IN THAT CERTAIN LOAN SALE AGREEMENT #BOA-01-052015.

Dated as of: May 13, 2015

**BANK OF AMERICA, N.A.**

By: *[signature]*
Name: Tamara J. Laughinghouse
Title: Director

AM 50513784.1

## ALLONGE

THIS ALLONGE IS AN ENDORSEMENT TO BE ATTACHED TO AND MADE A PART OF THAT CERTAIN AMENDED AND RESTATED PROMISSORY NOTE (together with any and all addenda, riders, exhibits, supplements, amendments, schedules and attachments) dated as of September 18, 2013 made by Richard J. Remijas, Jr., payable to the order of Bank of America, N.A. in the original principal amount of Seven Hundred Fifty-One Thousand Sixty and 00/100 Dollars ($751,060.00).

PAY TO THE ORDER OF GULF COAST BANK AND TRUST COMPANY, A LOUISIANA STATE-CHARTERED BANK, AS IS, WHERE IS, WITH ALL FAULTS AND WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, EXCEPT AS PROVIDED IN THAT CERTAIN LOAN SALE AGREEMENT #BOA-01-052015.

Dated as of: May 13, 2015

**BANK OF AMERICA, N.A.**

By: _[signature]_
Name: Tamara J. Laughinghouse
Title: Director

**EXHIBIT 2**

AM 50513784.1